IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FORT TRANSPORTATION &, )
SERVICE CO., )
                                             )
            Plaintiff, )
                                             )
                                             )
      v.                                     )      Case No. 06 C 437
                                             )
CENTRAL STATES, SOUTHEAST AND )              HONORABLE CHARLES R. NORGLE
SOUTHWEST AREAS PENSION FUND, )
                                             )
            Defendant. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant Central States, Southeast and Southwest Areas Pension Fund's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.

## I. BACKGROUND[1]

### A. Facts

Plaintiff Fort Transportation & Service Company ("Fort") filed this action to modify and vacate the arbitration decision and award issued on December 18, 2005 in favor of Defendant Central States Southeast and Southwest Areas Pension Fund (the "Fund"). Since 1970, Fort has entered into a series of collective bargaining agreements ("CBA") with Local 695, that required

---

[1] The court takes the undisputed facts from the Arbitrator's Decision and Award, attached to the Complaint.

1

Fort to make weekly contributions to the Fund. Specifically, Article 41 of the CBA provided that Fort make weekly contributions of $124.00 in the last year of the agreement for each regular employee in the group covered by the CBA.

In January 1998, prior to the expiration of the 1998 CBA, the Contracts Subcommittee of the Fund began to investigate the relationship between Fort and another trucking company, Fortrans. The Fund discovered that the wives of Fort executives were the owners of Fortrans. On January 29, 1998, the Fund sent a letter to Robert Leslie ("Leslie"), Fort's president, stating that all new Fort employees were being directed to Fortrans, instead of Fort. These employees were not replaced at Fort, which the Fund considered a violation of the adverse selection policy as dictated by the Fund Special Bulletin 90-7. Leslie responded that the decline in the number of Fort drivers was a result of deregulation. As a result, the Fund decided to conduct a further investigation of the ownership of both companies, and return to the issue in April 1998.

Then, on April 17, 1998, the Fund staff recommended termination of Fort's participation in the Fund, and brought the matter to the full Board of Trustees for consideration at the April 27, 1998 meeting. At the April 27 meeting, a motion passed to approve the termination of Fort as a Contributing Employer of the Fund and for the termination of its participation in the Fund, effective on or before July 1, 1998. On May 5, 1998, Carol Evans, ("Evans"), a Division Manager at the Fund wrote Leslie and stated that at the April 27 meeting, the Trustees decided to discontinue Fort's participation in the Fund effective June 27, 1998.

The amount of withdrawal liability as estimated by the Fund in 1998 was $30,142.82. At its May 28, 1998 meeting the Board of Trustees affirmed Fort's termination, effective June 30, 1998. On June 2, 1998, Leslie wrote to the Fund, and requested a current estimate of Fort's

2

withdrawal liability, assuming a 1998 withdrawal from the Fund. On June 10, Leslie received the estimated liability quote of $30,142.82. However, the Fund did not make a demand for payment, nor was a schedule of payments set up.

The July 14, 1998 minutes of the Board of Trustees included a notation that listed Fort as terminated from the Fund. As of this meeting, the Fund staff had not yet implemented Fort's termination. This was reflected in the minutes of the July 14 meeting which stated that "the previously authorized termination of Fort . . . [was] postponed for further consideration."

On November 3, 1998, Fort and Local 695 entered into a new CBA retroactive to July 1, 1998 through June 30, 2003. On that same day, Leslie sent a check to the Fund in the amount of $24,056.00 for the period between June 28, 1998, through October 31, 1998 for the drivers' "continued" participation in the Fund. In his letter to the Fund, Leslie stated that it was his "understanding that with a new ratified labor agreement, your Fund will then allow our drivers to come back to the Fund."

Between 1994 and 2003, Fort requested and received an annual estimate of its withdrawal liability. Each estimate included contributions for the preceding ten years, and none of the estimates included a credit for a prior 1998 withdrawal liability. For each estimate, Fort was asked to contact the Fund if there was an error in the calculations. Fort never reported any errors in these computations.

Then, in September 2003, Fort and Local 695 submitted a successor CBA covering July 1, 2003 through June 30, 2008 to the Fund. At this time, Fort did not ask for any estimate of complete withdrawal liability. On December 9, 2003, the Fund wrote Leslie in regards to the investigation as to the decline in Fort's drivers' participation in the Fund. Specifically, the

3

number of Fort employees declined from twenty-three in 1985, to three in 2003. In March 2004, the Contracts Subcommittee of the Fund recommended termination of Fort's participation. Notice was sent to Leslie and Fort's employees in the Fund that Fort's participation would cease on May 2, 2004. The parties do not dispute that there was complete withdrawal as of this date.

On August 18, 2004, the Fund sent a demand for payment of withdrawal liability to Fort for $624,205.88, along with a schedule of payments. This amount was calculated from Fort's contributions from 1994 through 2003. On August 26, Fort requested a review of this fee. Fort claimed that a complete withdrawal occurred on June 27, 1998, when the Fund refused to allow Fort's continued participation, and expelled Fort due to its alleged violation of the "adverse selection rule as elicited in your Special Bulletin No. 90-7." Fort further claimed that it reentered the Fund as a new employer in December 1998 when the Fund again accepted Fort as a participant. The Fund rejected this argument, but a recalculation reduced the amount of withdrawal liability to $600,978.06. The Board of Trustees found Fort's position meritless, and reaffirmed its demand. Fort filed its demand for arbitration, under the CBA.

**B. Procedural History**

On December 18, 2005, the arbitrator issued her decision and award in favor of the Fund, finding that Fort did not withdraw in 1998. Then, on January 25, 2006, Fort filed its Complaint in the United States District Court for the Northern District of Illinois, requesting that the court vacate the arbitrator's decision. On August 1, 2006, the parties filed cross Motions for Summary Judgment. On August 29, 2006, Central States filed its Response to Fort's Motion, and Fort filed its Response to Central's State's Motion on September 11. No Replies were filed in this matter. The parties cross motions for summary judgment are fully briefed and before the court.

4

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v.

Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Arbitration under ERISA

### 1. Review of Arbitrator's Award

Section 4221 of ERISA provides that in an action to vacate a withdrawal liability arbitration award, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that any findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c). Moreover, "courts are not authorized to review the arbitrator's decisions on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreements." Int'l Union of Operating Engineers, Local 139 v. J.H. Findorff & Son, Inc., 393 F.3d 742, 745 (7th Cir. 2004) (quoting Paperworkers v. Misco, Inc., 484 U.S. 29, 36 (1987)). If the arbitrator is even "'arguably construing or applying the contract and acting with the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Id. (quoting Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)). In other words, "only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award." Id; see Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). Finally, the court notes that "judicial review of arbitration awards under collective bargaining agreements is extremely limited." Dexter Axle Co. v. Int'l Assoc. of

6

Machinists & Aerospace Workers, 418 F.3d 762, 765 (7th Cir. 2005). With these principles in mind, we turn to the Fund's Motion for Summary Judgment.

### 2. The Arbitrator's Award is consistent with the CBA

As a preliminary matter, the court notes that there are no contested issues of fact. The parties filed Joint Exhibits in support of their respective motions for summary judgment. The only issue therefore before the court is the date of Fort's withdrawal from the Fund, and the amount of its withdrawal liability.

Upon review of the Arbitrator's decision, the court finds that the Arbitrator decided this case in accordance with the facts in the record, and therefore is not "clearly erroneous." See Int'l Union of Operating Engineers, 393 F.3d at 745. The Arbitrator found that Fort had not completely withdrawn from the Fund in 1998, and therefore continued on as a contributing member until its termination in 2004. In reaching her decision, the Arbitrator noted that only the Board of Trustees could vote to terminate Fort's participation in Fund. Upon review of the Minutes from the Board of Trustee meetings, the Arbitrator concluding that the Board merely postponed any final decision on Fort's status. See Def.'s Mem. in support of Summ. J., Ex. A, at 20-21. Moreover, the Arbitrator stated that "it is clear that the Board did not authorize completion of the termination process . . . and was put on hold until further notice to proceed." Id. at 17. Because the Board of Trustees never voted on Fort's termination, Fort cannot now argue that it withdrew in 1998.

Additionally, the Arbitrator reviewed several letters written between Fort and Central States. Specifically, the Arbitrator focused on Central States' letter to Fort of May 5, 1998, wherein the Fund stated that "absent an acceptable change to [Fort's] practices" it would be

terminated from the Fund. The Arbitrator also noted that in the Fund's September 1, 1998 letter it stated that "the Fund is still reviewing the situation in as much detail as possible in an effort to find a way to allow the continued participation of your employees." The Arbitrator based her conclusions on specific facts before her, and as a result, the court cannot say that the Arbitrator's finding that Fort had continued as a member of the Fund until 2004 is clearly erroneous.

The Arbitrator additionally found it significant that Fort continued to submit contributions for the time period of 6/28/1998 through 10/31/1998, for what Leslie stated was "the drivers' continued participation in the Pension Fund." See Def.'s Mot. for Summ. J., Ex. A, at 6-7. In 1998, Fort believed it was still a part of the Fund, and continued to contribute accordingly. However, once it discovered that withdrawal liability amounted over to $600,000.00, it decided to challenge this claim and allege that it did, after all, withdraw in 1998. The Arbitrator found this argument meritless, as does the District Court. Fort proceeded, for six years, as though it had not been removed from the Fund. It cannot now claim that it had withdrawn completely from the Fund in 1998, merely to escape the withdrawal liability.

Therefore, the court finds that the Arbitrator has carefully and thoroughly conducted an exhaustive review of the evidence in the record. Her decision and award is based on the totality of the facts, and accurately follows the law. As a result, there cannot be a "clear error" as to her judgment.

## III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: _11-9-06_